Raymond CARTER, Plaintiff,

v.

CITY OF PHILADELPHIA,
et al., Defendants.

Civil Action No. 97–CV–4499.

United States District Court,
E.D. Pennsylvania.

April 20, 1998.

Richard W. Berlinger, Robert W. Small, Berlinger & Small, Abington, PA, Susan F. Burt, Frank Finch, III, Phila, PA, for Raymond Carter.

Shelley R. Smith, Asst. City Solicitor, City of Phila. Law Dept., Phila, PA, for City of Philadelphia, Thomas Ryan, John Doe, Wayne Settle, Michael Duffy.

Eric B. Henson, Hoyle, Morris & Kerr, Phila, PA, Shelley R. Smith, Asst. City Solicitor, City of Phila Law Dept., Phila, PA, for Lynne Abraham.

Eric B. Henson, Hoyle, Morris & Kerr, Phila, PA, for Richard Roe.

## MEMORANDUM OPINION

Kauffman, District Judge.

The Philadelphia District Attorney's Office has moved pursuant to Rule 12(b)(6) to dismiss all Counts of the Amended Complaint brought against defendant Richard Roe ("Roe").[1] Roe was named by plaintiff Raymond Carter ("Carter") both in his official and individual capacities. For the reasons set forth below, this Court finds that the official capacity claims against Roe are barred because, when performing its investigatory and prosecutorial functions, the District Attorney's Office is an arm of the State protected from suit in federal court by the Eleventh Amendment. The Court also concludes that Carter's individual capacity claims against Roe fail to state a claim under 42 U.S.C. § 1983. Accordingly, the District Attorney's Motion to Dismiss all claims against Roe is **GRANTED**.

### I. BACKGROUND

On September 26, 1997, Carter filed an Amended Complaint against Roe, the City of Philadelphia, three Philadelphia Police officers—Thomas Ryan, Wayne Settle, and Michael Duffy—and a fourth, unidentified

---

1. Although the Amended Complaint identifies Roe as multiple unknown "employees of the District Attorney's Office," for the sake of clarity the Court will refer collectively to these unidentified defendants as "Roe."

"John Doe" employee of the Philadelphia Police Department. Carter has sued all of the individual defendants, identified and unidentified, in both their official and individual capacities.

Carter alleges that following the September, 1986, barroom murder of a Robert Harris, Officer Thomas Ryan of the 39th Precinct introduced Settle, Duffy, Doe, and Roe to Pamela Jenkins, a woman with whom Ryan allegedly had a longstanding relationship. The Amended Complaint identifies Settle, Duffy, Doe and Roe as "the Homicide Detectives investigating the Harris murder." [Compl. ¶¶ 11,12].[2]

Officer Ryan allegedly paid Jenkins an unspecified sum of money to inform the "homicide detectives" that she had witnessed Carter shoot Harris and to so testify at Carter's trial. [Compl. ¶ 13]. Carter contends that because of defendants' alleged failure to investigate the information provided by Jenkins, he was wrongly convicted of first-degree murder and sentenced to life imprisonment without the possibility of parole. [Compl. ¶¶ 15–17].

Following a 1996 post-conviction hearing, the Philadelphia Court of Common Pleas found that Jenkins' status as a paid informant had not been disclosed to Carter. Even though the Court found that the District Attorney's Office was not aware that Jenkins had been paid, it nevertheless concluded that the failure to disclose violated the Supreme Court's holding in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and ordered a new trial. In vacating Carter's conviction, however, the Court expressly noted on the record that it *had not* found Carter to be innocent of the Harris murder. On December 30, 1996, following the District Attorney's decision to *nolle prosse* the case without prejudice, Carter was released from prison. [Compl. ¶ 19].

Carter now claims that his conviction was "proximately caused by the following policies,

practices, customs or usages of the *City* as adopted by its duly authorized agents":

a. Failure to train the City's police officers in the use of paid informants in homicide cases;

b. Failure to monitor and/or investigate the use of paid informants as trial witnesses in homicide cases;

c. Failure to provide the Police Department or the Office of District Attorney adequate funding to investigate corruption by police officers in procuring and providing tainted evidence to the Office of District Attorney for use in homicide cases;

d. Failure to discipline or prosecute known incidents of police officers procuring and providing to the District Attorney's Office tainted evidence for use in homicide prosecutions;

e. Refusing to investigate or inadequately investigating complaints of the use of tainted evidence in homicide prosecutions;

f. Concealing or withholding from those wrongfully arrested, convicted and/or imprisoned in homicide cases information known to the City which would enable such wrongfully arrested, convicted and imprisoned persons to secure post-conviction relief.

[Compl. ¶ 20 (emphasis added) ].

Carter asserts that these alleged policies of the City "were unconstitutional or, if constitutional, were deliberately indifferent to the constitutional and other rights of Carter and others similarly situated." [Compl. ¶ 21]. Based on these allegations, the Amended Complaint purports to state causes of action against Roe, in his official and individual capacities, under 42 U.S.C. § 1983 (Count I), 42 U.S.C. § 1985 (Count II),[3] Article I, §§ 1, 9, 13 & 26 of the Pennsylvania Constitution (Count III), and state law claims for abuse of process (Count IV), malicious use of process (Count V), false arrest (Count VI), false im-

---

**2.** The Complaint identifies Roe as both a homicide detective and as multiple unknown employees of the District Attorney's Office. For the purpose of this analysis, the Court will consider Roe to be the latter. *See* fn. 1, *supra.*

**3.** Carter has voluntarily withdrawn his claims under 42 U.S.C. § 1985.

prisonment (Count VII), invasion of privacy (Count VIII), and negligent infliction of emotional distress (Count IX).

## II. DISCUSSION

### A. The Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir.1993). In considering a Rule 12(b)(6) motion, the Court must accept as true the complaint's well-pleaded allegations and view them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jordan v. Fox, Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994). The Court must also accept as true any reasonable inferences that can be derived from the facts alleged in the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 (3d Cir.1994).

This advantage is not absolute, however, and "legal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness." *Plater–Zyberk v. Abraham,* 1998 WL 67545, at *3 (E.D.Pa. Feb.17, 1998) (Hutton, J.) (quoting *Government Guarantee Fund v. Hyatt Corp.,* 955 F.Supp. 441, 448 (D.Vi. 1997)). *See also* Wright & Miller, *Federal Practice & Procedure* § 1357 (2d ed.1997). The Court may only grant the motion if, after viewing the complaint in the light most favorable to the plaintiff, "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" under the applicable law. *Plater–Zyberk,* 1998 WL 67545, at *3 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### B. When Performing Its Investigatory And Prosecutorial Functions, The District Attorney's Office Is An Arm Of The State For Eleventh Amendment Considerations.

Carter's "official capacity" § 1983 action against Roe must be treated as a claim against the District Attorney's Office itself. *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) ("official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent") (internal quotation marks omitted). In moving for dismissal of the official capacity claims against Roe, the District Attorney's Office argues that it is immune from suit in federal court under the Eleventh Amendment to the United States Constitution.

Ratified in February, 1795, the Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S.C.A. Const., Amend. XI.[4]

The Eleventh Amendment's reference to suits "against one of the United States" encompasses not only suits in which a state is a named defendant, but also suits brought against state agents and state instrumentalities, which are frequently described as "arms of the state." *Regents of the University of California v. Doe,* 519 U.S. 425, 117 S.Ct. 900, 903, 137 L.Ed.2d 55 (1997) (citing *Poindexter v. Greenhow,* 114 U.S. 270, 287, 5 S.Ct. 903, 29 L.Ed. 185 (1885); *Ex Parte Ayers,* 123 U.S. 443, 487, 8 S.Ct. 164, 31 L.Ed. 216 (1887); *Smith v. Reeves,* 178 U.S. 436, 438–39, 20 S.Ct. 919, 44 L.Ed. 1140 (1900); *Ford Motor Co. v. Department of Treasury of Ind.,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). The Eleventh Amendment also bars federal suits against state officials acting in their official capacities. *Kentucky v. Graham,* 473 U.S. 159, 169, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985) ("The Court has held that, absent waiver by the State or valid congressional override, the Eleventh Amendment bars a damages action

4. The Eleventh Amendment has been construed to immunize an unconsenting state "from suits brought in federal courts by her own citizens as well as by citizens of another state." *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Hans v. Louisiana,* 134 U.S. 1, 11–12, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

against a State in federal court. This bar remains in effect when State officials are sued for damages in their official capacity.") (citations omitted). "The Amendment is rooted in a recognition that the States, although a union, maintain certain attributes of sovereignty, including sovereign immunity. It thus accords the States the respect owed them as members of the federation." *Hess v. Port Authority Trans–Hudson Corp.,* 513 U.S. 30, 39, 115 S.Ct. 394, 130 L.Ed.2d 245 (1994) (citations omitted).[5]

██ Whether the District Attorneys' Office, when performing its investigatory and prosecutorial functions, is an "arm of the state" under the Eleventh Amendment is a question of federal law. *Blake v. Kline,* 612 F.2d 718, 722 (3d Cir.1979). In making that determination, this Court must consider three factors:

(1) whether, in the event the plaintiff prevails, the payment of the judgment would come from the state . . . ;

(2) the status of the agency under state law . . . ; and

(3) what degree of autonomy the agency enjoys.

*Christy v. Pennsylvania Turnpike Comm.,* 54 F.3d at 1144–45 (citing *Peters v. Delaware River Port Auth.,* 16 F.3d 1346, 1350 (3d Cir.1994); *Bolden v. Southeastern Pennsylvania Transp. Auth.,* 953 F.2d 807, 816 (3d Cir.1991) *(en banc)).*

### (1) *Source of Funding*

██ No single factor is dispositive of the Eleventh Amendment analysis. Ordinarily, however, most courts have held that the "most significant" factor is whether a judgment against the District Attorney's Office would be paid out of the state treasury.[6] *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655, 659 (3d Cir.1989) *(en banc).* The District Attorney's Office

acknowledges that, because the majority of its funding comes from the City, this factor weighs against a finding of Eleventh Amendment immunity. *Cf. Robinson v. Court of Common Pleas of Philadelphia County,* 827 F.Supp. 1210, 1214–16 (E.D.Pa.1993) (Ludwig, J.) (finding Philadelphia Common Pleas Court entitled to Eleventh Amendment immunity despite fact that any judgment would be paid by City).

### (2) *Status under State Law*

It would be hard to imagine functions more essential to the sovereignty of state government than the investigation and prosecution of state criminal charges. Prior to 1850, the Attorney General of the Commonwealth was empowered to perform those critical functions. In practice, however, he appointed deputy attorneys general for the counties to perform them. *Commonwealth ex rel. Specter v. Freed,* 424 Pa. 508, 512, 228 A.2d 382, 383–84 (1967).

In 1850, the General Assembly transferred the duties of the appointed deputy attorneys general to a "district attorney" elected by the voters of each county. *Freed,* 228 A.2d at 384. *See also Commonwealth ex rel. Specter v. Bauer,* 437 Pa. 37, 40, 261 A.2d 573, 575 (1970). The statute creating the office of district attorney, as amended, establishes beyond any doubt that the District Attorney's Office functions as an arm of the Commonwealth when performing its investigative and prosecutorial duties:

The district attorney shall sign all bills of indictment and conduct in court all criminal and other prosecutions, *in the name of the Commonwealth,* or, when the Commonwealth is a party, which arise in the county for which he is elected, *and perform all the duties which, prior to May 3, 1850, were performed by deputy attorneys general.* The duties herein conferred shall be in addition to all other

---

**5.** The Eleventh Amendment was intended to reaffirm the Framer's original understanding that "federal jurisdiction over suits against unconsenting States 'was not contemplated by the Constitution when establishing the judicial power of the United States.' " *Pennhurst State School & Hospital v. Halderman,* 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (quoting *Hans v. Loui-*

*siana,* 134 U.S. 1, 15, 10 S.Ct. 504, 33 L.Ed. 842 (1890)).

**6.** While the importance of the funding factor is often repeated, the Eleventh Amendment refers to suits both at law and in equity. *Pennhurst,* 465 U.S. at 100, 104 S.Ct. 900.

duties given to the said district attorney by other statutes.

16 P.S. § 1402(a) (emphasis added).

The Pennsylvania Supreme Court has held that "[i]f this statute means anything at all, it means that district attorneys in this Commonwealth have the power—and the duty— to represent the Commonwealth's interests in the enforcement of its criminal laws." *Bauer*, 261 A.2d at 575 (recognizing District Attorney's "historical duty of representing the Commonwealth's interest in the enforcement of its criminal laws").

Pennsylvania's Commonwealth Court has also concluded that when investigating and prosecuting crimes, the district attorneys of each county "perform sovereign functions of state government." *Pennsylvania Gamefowl Breeders Assoc. v. Commonwealth*, 122 Pa. Commw. 52, 56, 551 A.2d 361, 363 (1988). *See also Commonwealth v. DiPasquale*, 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968) ("A District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case."); *Harris v. Pernsley*, 820 F.2d 592, 598 (3d Cir.1987).

█ "In deciding Eleventh Amendment questions with respect to some government officials, ... courts must look more specifically at the office's particular function at issue in the case." *Bibbs v. Newman*, 997 F. Supp. 1174, 1178, (S.D.Ind.1998) (citing *McMillian v. Monroe County, Alabama*, 520 U.S. 781, ——, 117 S.Ct. 1734, 1737, 138 L.Ed.2d 1 (1997)). In *McMillian*, the Supreme Court adopted a functional analysis in determining whether a county Sheriff was a state or local official for the purpose of § 1983 liability in a case, such as the present, involving allegations of wrongful arrest and prosecution. The *McMillian* Court held that the issue of the Sheriff's status could not be

determined "in some categorical, 'all or nothing' manner," but only by asking whether the Sheriff "represents the State or the county *when he acts in a law enforcement capacity.*" 520 U.S. at ——, 117 S.Ct. at 1737 (emphasis added). *See also Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir.1996) (utilizing functional analysis to determine that county prosecutor was acting as local official when making employment decision, as opposed to when exercising prosecutorial function, when he acts as state official).[7]

*McMillian's* functional approach to the question of state or local status, as applied to locally elected prosecutors, is hardly novel. For example, in *Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir.1993), the Sixth Circuit held that while a local prosecutor was a municipal employee, she was a *state official* not subject to suit under § 1983 when enforcing state criminal law:

> While we agree with the parties that Cronin is employed by the City of Youngstown, we nevertheless conclude that plaintiff's suit must fail as Cronin *acted on behalf of the state when she was prosecuting state criminal charges* and reduced the charge at the September 27, 1991 hearing. City prosecutors are responsible for prosecuting state criminal charges. *See* Ohio Rev.Code §§ 1901.34(C), 309.08. Clearly, state criminal laws and state victim impact laws represent the policy of the state. *Thus, a city official pursues her duties as a state agent when enforcing state law or policy. Cf. Scott v. O'Grady*, 975 F.2d 366 (7th Cir.1992); *Echols v. Parker*, 909 F.2d 795 (5th Cir.1990). Because Cronin acts as a state agent when prosecuting state criminal charges, the suit against Cronin in her official capacity is to be treated as a suit against the state. Again, a suit against a state is not cognizable under 42 U.S.C. § 1983. *Will [v. Michigan Department of State Police]*, 491 U.S. [58] at 71, [109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)].

---

7. The *Coleman* court held:
 The fact that the prosecutor '[i]n his county ... is the foremost representative of the executive branch of government in the enforcement of the criminal law' is not disputed here. *State v. Winne*, 12 N.J. 152, 96 A.2d 63, 72 (1953).

What we must address is the county prosecutor's role in the promotion process on the local level, an issue *separate and apart* from the prosecutor's well-recognized executive investigatory and prosecutorial functions.
87 F.3d at 1505 (emphasis added).

11 F.3d at 657–58 (emphasis added). *See also Esteves v. Brock,* 106 F.3d 674, 677–78 & n. 8 (5th Cir.1997) (although district attorney was locally elected, "[a]s a state officer acting in her official capacity, [district attorney] … is protected by the Eleventh Amendment from suit under § 1983 for money damage"); *Arnold v. McClain,* 926 F.2d 963, 966 (10th Cir.1991) (district attorney entitled to Eleventh amendment immunity even though elected by voters of two counties); *Owens v. Fulton County,* 877 F.2d 947, 951 (11th Cir. 1989); *Scott v. O'Grady,* 975 F.2d 366, 371 (7th Cir.1992) ("[W]hen a county sheriff in Illinois performs his duties as the principal executive officer or chief law enforcement officer of the county, he acts as a county official and does not get the benefit of the Eleventh Amendment. But this conclusion does not end our inquiry…. The county sheriff acts as an arm of the Illinois state judicial system in executing Writs of Assistance and other state court orders. When fulfilling this statutory duty, the sheriff and his deputies must be deemed state officials for the purposes of Eleventh Amendment immunity."); *Bibbs,* 997 F.Supp. at 1178.[8]

### (3) *Autonomy*

■ "The District Attorney of Philadelphia County, no less than district attorneys in any other county of this Commonwealth, is the sole public official charged with the legal responsibility of conducting in court all criminal and other prosecutions, in the name of the Commonwealth." *Commonwealth ex rel. Specter v. Bauer,* 437 Pa. 37, 42, 261 A.2d 573, 576 (1970). Thus, when the District Attorney's Office conducts criminal prosecutions, it acts free from interference by and autonomously from the City. *See Commonwealth ex rel. Specter v. Freed,* 424 Pa. 508, 512, 228 A.2d 382, 383 (1967) ("neither the Constitution nor the statutes of this Commonwealth have ever granted Philadelphia or any other political subdivision of Pennsylva-

nia authority to alter or interfere with the district attorney's conduct of law enforcement activities").

■ While the District Attorney's Office is not subject to local control in performing its investigatory and prosecutorial functions, the Attorney General with court approval has the statutory power to supersede a District Attorney's failure to prosecute a criminal offense. 71 P.S. § 732–205(a)(4) ("Supersession shall be ordered if the Attorney General establishes by a preponderance of the evidence that the [D]istrict [A]ttorney has failed or refused to prosecute and such failure or refusal constitutes abuse of discretion."). Even more significantly, the District Attorney's authority to conduct criminal prosecutions has always been subject to judicial oversight:

A District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case. [citations omitted]. But this broad general power of a District Attorney is subject to the right and power of a Court (a) to provide generally for the orderly administration of criminal justice, including the right and power to supervise all trial and all Court proceedings, and (b) to protect all of a defendant's rights to a fair trial and due process under the Constitution of the United States and the Constitution of Pennsylvania.

*Commonwealth v. DiPasquale,* 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968). All members of Pennsylvania's Unified Judicial System, from the Supreme Court to traffic court, are state entities protected by the Eleventh Amendment. *See Robinson v. Court of Common Pleas of Philadelphia County,* 827 F.Supp. 1210, 1215 (E.D.Pa.1993) (Ludwig, J.) (finding Philadelphia Common Pleas Court protected by Eleventh Amendment,

---

**8.** Carter places much emphasis on Article 9, § 4 of Pennsylvania's Constitution, which defines district attorneys as county rather than state officers. PA. Const. art. 9, § 4 (Purdon's 1994). This provision, however, does not in any way affect the district attorney's function of investigating and prosecuting crimes in the name of the

Commonwealth. After 1850, the prosecutorial function of the appointed deputy attorneys general was transferred to officials elected at the county level. Thus, this provision does not preclude the Court from concluding that when investigating and prosecuting crimes, the district attorneys are performing their traditional state function.

even though adverse judgment would be paid by City).

Accordingly, although the first *Fitchik* factor indisputedly would weigh against a finding of Eleventh Amendment immunity, the inquiry does not stop there, and the second and third factors weigh strongly in favor of finding that the District Attorney's Office, when performing its historic functions of investigating and prosecuting crimes on behalf of the Commonwealth, is an "arm of the State" not subject to suit in federal court without its consent. The Court therefore concludes that Carter's claims against Roe in his official capacity are barred by the Eleventh Amendment to the United States Constitution.

In opposing dismissal, Carter argues that even if the District Attorney's Office was entitled to Eleventh Amendment immunity for actions arising from its prosecution of crimes, his claims are not based on the conduct of the District Attorney's Office in his own conviction, but rather on its failure to establish appropriate policies and procedures to detect and prevent the use of tainted or manufactured evidence in homicide cases.

In *Pitts v. County of Kern*, 17 Cal.4th 340, 949 P.2d 920, 70 Cal.Rptr.2d 823 (1998), the California Supreme Court recently rejected a similar argument, concluding that the District Attorney was a state officer with respect to both prosecution *and* policy:

> [I]t logically follows that [the district attorney] also represents the state, and not the county, when training and developing policy in these areas. No meaningful analytical distinction can be made between these two functions. Indeed, a contrary rule would require impossibly precise distinctions. The district attorney would represent the state when he or she personally prepared to prosecute and prosecuted criminal violations of state law, but the county when training others to do so, or when developing related policies. Moreover, anytime the district attorney relied on a formal policy to handle a particular aspect of a case, that decision would be attributable to the county, even though the prosecution itself would be a state function. Such a result would be nonsensical, and

would impose local government liability under the most arbitrary of circumstances.

70 Cal.Rptr.2d 823, 949 P.2d at 934–35.

This Court agrees, and, accordingly, concludes that regardless of whether the District Attorney's Office is prosecuting cases or developing the policies to govern such prosecutions, it is an arm of the State protected from suit in federal court by the Eleventh Amendment.

### C. Carter's Individual Capacity Claims Against Roe Fail To State A Cause Of Action Under § 1983.

 The Eleventh Amendment does not immunize State officials for actions taken in their individual capacities. *Sullivan v. Barnett*, 139 F.3d 158, 179–180, 1998 WL 107983, at *21 (3d Cir. Mar.13, 1998) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237–38, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). When prosecutors are sued under § 1983 in their individual capacities, however, they are entitled to invoke the absolute prosecutorial immunity set forth in *Imbler v. Pachtman*, 424 U.S. 409, 430–31, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

 Relying on common-law precedent and policy considerations, the *Imbler* Court held that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution" was immune from suit under § 1983. *Imbler's* absolute immunity extends to allegations that a prosecutor knowingly utilized perjured testimony in obtaining a conviction. *See Siano v. Justices of Massachusetts*, 698 F.2d 52 (1st Cir.1983) (prosecutor's absolute immunity extends to knowing use of forged evidence in obtaining criminal conviction); *Heidelberg v. Hammer*, 577 F.2d 429 (7th Cir.1978) (§ 1983 suit alleging that state prosecutors had falsified lineup report and police tapes of incoming phone calls properly dismissed under *Imbler*); *Jones v. Shankland*, 800 F.2d 77 (6th Cir.1986) (civil rights plaintiff convicted of murder but released from prison based on newly-discovered evidence had no cause of action against prosecutor even if prosecutor deliberately elicited perjured testimony to obtain conviction); *Tate v. Grose*, 412 F.Supp. 487 (E.D.Pa.1976) (suit dismissed on

basis of absolute immunity where state prosecutors allegedly used perjured testimony). Accordingly, Roe has absolute immunity for the conduct alleged here relating to Carter's prosecution.

Carter again argues, however, that his claims against Roe arise not from his prosecution, but from Roe's alleged role in formulating the policies and practices (or lack thereof) that ultimately resulted in his prosecution. [Compl. ¶ 20]. Construed in the light most favorable to Carter, the Amended Complaint could be read to include a claim for individual "supervisory" liability under § 1983. The same well-settled legal standards that govern a claim for municipal liability (as set forth in *Monell v. Department of Social Servs.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and its progeny) apply in a § 1983 action brought against "supervisors" in their individual capacities for policy decisions. *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir.1989) ("[T]he standard of individual liability for supervisory public officials will be found to be no less stringent than the standard of liability for the public entities that they serve."). Foremost, Roe cannot be held liable under § 1983 on a *respondeat superior* theory of liability. *Slaughter v. City of Philadelphia*, 1995 WL 12060, at *3 (E.D.Pa. Jan.12, 1995) (Waldman, J.). Thus, unless Roe had a direct role in Carter's prosecution (in which case he would have complete immunity under *Imbler*), he cannot be held liable for the conduct of the assistant district attorneys who prosecuted Carter.

■ Rather, to hold Roe liable under a theory of supervisory liability, Carter must identify a particular policy, attribute that policy to Roe himself, and then establish a causal link between the execution of that policy and the injury he allegedly suffered. *Losch v. Borough of Parkesburg*, 736 F.2d 903, 910 (3d Cir.1984). In short, Carter must allege that the policies formulated by Roe were the "moving force of the constitutional violation." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018).

Although failing to identify any specific policy that resulted in Carter's alleged injury, the Amended Complaint could be construed to allege that his injuries arose from the *absence* of a policy regarding the identification of paid informants. As such, Carter's claims against Roe are properly analogized to the "failure to train" cases arising under § 1983, and should be governed by the principles set forth in those cases.

The United States Supreme Court has held that inadequate training procedures "may serve as the basis for § 1983 liability only where the failure to train amounts to *deliberate indifference* to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) (emphasis added). The Court explained that "[o]nly where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." 489 U.S. at 389, 109 S.Ct. 1197. The Court emphasized that in order to establish § 1983 liability under this theory, the failure to train must "reflect[ ] a 'deliberate' or 'conscious' choice by [the] municipality." *Id.*

■ The "deliberate indifference" of a municipal policy maker may be established in two ways: 1) where the harm in question occurred on numerous previous occasions and municipal officials failed to respond appropriately; and 2) where the risk of harm "is so great and so obvious" that the failure of the policy maker to respond would amount to deliberate indifference in itself. *Sample*, 885 F.2d at 1118. *See also Robinson v. Winslow Township*, 973 F.Supp. 461, 468 (D.N.J.1997).

■ Even when read most favorably for Carter, the Amended Complaint falls far short of stating a claim for supervisory liability based on a failure to train theory against Roe in his individual capacity. The Amended Complaint clearly alleges that the *City* was responsible for the policies leading to Carter's conviction—*not* the policies of the still unidentified Roe. In short, a nebulous nonpolicy with respect to the use of paid informants, imposed by the City and passively

"adopted" by some unknown policy making assistant district attorney is not sufficient to state a claim under § 1983, even when the most liberal notion of pleading requirements are stretched virtually to their breaking point. *See Slaughter,* 1995 WL 12060, at *3 ("suing people on the hope that evidence to justify the claim might later be obtained is quite inconsistent with Fed.R.Civ.P. 11") (Waldman, J.).

## III. *CONCLUSION*

When investigating or prosecuting a criminal act on behalf of the Commonwealth, the Philadelphia District Attorney's Office is an arm of the State for the purpose of Eleventh Amendment immunity from suit. Accordingly, Carter's § 1983 action against Roe in his official capacity must be dismissed. The Amended Complaint also fails to state a claim against Roe in his individual capacity because it fails to allege facts sufficient to support any theory of recovery under § 1983.

This Court declines to exercise supplemental jurisdiction over the state law claims asserted by Carter against Roe in his individual capacity in Counts III through IX of the Amended Complaint. 28 U.S.C. § 1367(c).